American Homeland Title Agency v. Robertson is our next case for argument. Mr. Engle. Good morning, Your Honors. May it please the Court. Your Honor, the grant of summary judgment in this case was improper because the evidence presented a genuine issue of a disputed material fact. In particular, the disputed material fact we'd suggest occurred in this case and that the District Court failed to fully appreciate was that the State of Indiana has established two separate methods for determining fines and penalties for title insurance companies who violate the law. What do I mean by that? I must say I don't understand this lawsuit. This claim appears to have been settled and released. Release is a perfectly good defense to any claim and that appears to be a good defense here. What's left? Well, Your Honor, I'd suggest there's not a release in this case. It was a settlement of potential fines and penalties that my clients faced. But I'd say there's really two responses. The first is that there is evidence in the record that the agreement that Your Honor is referencing was the result of coercion. Put that aside for a second. Yes, one has to put that aside. There's been no collateral attack on that agreement. You haven't offered to... There just hasn't been a collateral attack. I understand, Your Honor. And so I think, though, the relevant inquiry in this case, though... And shall we have a settlement? Well, I'd suggest, Your Honor, that there's a problem with the settlement and that is that the settlement is a result of an improper exercise of discretion by the government agency in this case. Let me see if I can answer by way of an analogy. I was reading recently about a study from a professor at Loyola Law School who demonstrated significant racial disparities in plea deals between white and black people for misdemeanors in the state of Wisconsin. Now, this court would, I think, entertain a lawsuit by people who received those disparate plea offers and would not say, well, you pled guilty in the case, so that's the end of the analysis. And I think Your Honors would do so because the deliberate use of factors such as race, religion, or other suspect classifications by the prosecutors would suggest that the exercise of prosecutorial discretion violated due process of equal protection of the law. In this case, we have the same exact situation. What you have is that Indiana companies, it turns out, receive penalties and fines in accordance with a particular set of guidelines. That would be a good reason for you not to have settled. Perhaps, Your Honor, but what happened in this case... which says that in insurance it's perfectly legal to favor hometown companies? Your Honor, that issue certainly was not raised below. Second, I think... The McCarran-Ferguson Act repeals the dormant commerce clause for the insurance business. Congress delegated to the states the power to do what they want. They can close their borders to out-of-staters. They can do just about anything they want. Your whole argument is inconsistent with the McCarran-Ferguson Act. Now, I could understand an argument that the McCarran-Ferguson Act is not a valid exercise of constitutional powers. But that failed in the Supreme Court in 1948. Your Honor, originally in this case there was a commerce clause claim brought. And that claim was dismissed on the basis just of what Your Honor described. But I'd suggest that the 1983 action was allowed to go forward. And the 1983 action is premised on the idea that even if the state can, as Your Honor pointed out, under the McCarran-Ferguson Act, discriminate against out-of-state interests, once it exercises that discretion to allow in-state interests there, it is not given free reign to penalize companies in-state or out-of-state. And, in fact, it would be inconsistent with... Why not? Well, because, Your Honor, it would be inconsistent with the purpose of the statute, which is to allow... Is it inconsistent with any of the statutory text? I have not... You know what the Supreme Court says these days when somebody says, let's just ignore what the statute says and talk about a purpose imputed to it. We start, and in 99% and 44% of the cases end with the statute. So what language are you relying on for this argument? I believe there is no statutory language that would permit the exercise of discretion by the state to discriminate against out-of-state interests once it allows those out-of-state interests to participate in the marketplace. And here's why I say that. Because, Your Honor, the purpose, if I understood, of the McCarran-Ferguson Act... I didn't ask you to talk about purpose. I'm trying to discourage you from talking about purpose and encourage you to talk about the statutory language. Your Honor, and I think the answer is that there is nothing in the statutory language that would permit the state to discriminate against out-of-state interests once it allows those out-of-state interests to appear in the state. There's nothing in the statutory language that I'm aware of, for example, that permits the state to say that in-state insurance companies can charge one rate and out-of-state insurance companies can charge a separate rate, but rather that they can prohibit the out-of-state companies from even coming into the state at all. That is why I believe the district court allowed the 1983 claim to continue in this case. And I suggest that decision has not been challenged by the apolis in this case. But where we get at then, Your Honor, is the fact that the out-of-state companies, like my client, were not punished in accordance with the guidelines in this case. And I'd suggest to Your Honors that the guidelines in this case are really the alpha and the omega of the analysis here. It is undisputed in the record that the defendant did not follow his own guidelines in imposing penalties on my client. What is disputed is why they did not follow those guidelines. Now, this case would be very different, Your Honor, I'd suggest, if the commissioner, during his testimony, had testified exactly as the appellee's brief was. If, when he asked, why did you not follow the guidelines for American Homeland Title, he had said, well, there were certain aggravating factors that were in place. They were a really bad actor, they had a lot of violations, they did A, B, and C. That would be an answer to the case, and we probably wouldn't be standing here today. But instead, we don't have that answer. When asked specifically, everyone, why were the penalties not in accordance with the guidelines in this case, the answer always came back, well, I don't know, I don't remember, I don't recall. So what you're left, then, is with a record to suggest where is an inference of discrimination against out-of-state interests. Well, we've got a couple things that suggest that inference of discrimination. The first is that you have a statement by the investigator. He said specifically, in the context of discussions about the penalties of this case, that if you guys were not writing this, someone from Indiana would. And the second is you have an opinion by an expert in this case, Dr. Voss, who suggests that out-of-state companies are not punished in accordance with these guidelines. The expert was excluded. The expert was excluded under Daubert, and I think, Your Honor, we challenge that. And the reason is because I think the district court didn't appreciate what exactly the expert was asked to do in this case. The district court's opinion, and in particular, I'm thinking of the section on page 26 of the district court's opinion, which is on page A29 of the short appendix. The district court seemed to think that the expert was retained to create a model of what penalties would look like. Essentially that he would be acting like an economist who would come in and say, if you were going to impose penalties upon certain insurance companies who did wrong things, this is how you would calculate those penalties. That's not what Dr. Voss was asked to do. And the district court's analysis on that page of the district court's opinion puts up the wrong standard and applies the wrong methodology. Instead, Dr. Voss was simply asked to say, does the department follow its own guidelines for in-state companies versus out-of-state companies? And his opinion, after running 10,000 simulations, was that he didn't. Now, the district court doesn't say that Dr. Voss uses an improper methodology. It doesn't say that his statistical analysis was incorrect or anything like that. Instead, the district court said, well, there are certain factors that Dr. Voss failed to consider. The reason that they should not have been excluded under Daubert is twofold. First, as I indicated, that's not what the expert was asked to do. And second, that is, it really goes to the weight that the testimony should be given and not the admissibility of that testimony. So what you have, then, in this case, when you look at the expert, is that in certain cases, out-of-state companies are treated less favorably. Now, what's interesting about this case, and where I think the district court really failed to appreciate the analysis. Well, that's not even clear from the expert's opinion because he counted circumstances in which out-of-state companies were treated more favorably. In other words, below guidelines penalties. Yes. And he treated them alike. Everybody was counted if it was an out-of-state company and it was a non-guidelines penalty, above or below. So you can't say that his opinion was probative of out-of-state insurance companies being treated less favorably. It's just that they were treated differently above and below, but there's no control for other variables, which is part of the problem that the district court had with the opinion. Your Honor's question, I think, gets at an important point here, which is that, on average, in-state companies and out-of-state companies were treated differently. And a very simple analysis of the case, then, would say, well, we have two systems. They, on average, turn out OK. That's all right. You might have attempted to say that they are separate but equal type systems there. But one of the ways you could exclude out-of-state companies is to impose uncertainty on them. And uncertainty is a significant cost that Dr. Voss' analysis indicates would appear for these companies. For example, if you had a situation where in-state companies, the director said, could get a flat fine of $1,000 for every violation, every time. And you had out-of-state companies face a fine of between $0 and $2,000. That would offend the equal protection rights of those companies because they are not analyzed or given the same penalties, even though the average penalty might be the same. And that would be a cost to the out-of-state companies because those out-of-state companies would say, well, if I violate the law, I could face a much more significant penalty than an in-state company. It would be like that old economics experiment where you'd say, well, instead of just having traffic tickets be $15 for every parking violation, you just impose one $1 million fine on one person over the course of the year. On average, the penalties might be the same, but you'd have a different deterrent effect and a different way of everyone looking at the situation. I had asked to reserve some time for rebuttal, so if the court doesn't have questions,  Certainly, counsel. Thank you, Your Honors. Mr. Maley. Good morning, Your Honors. May it please the Court. My name is John Maley, counsel for Commissioner Robertson. I respectfully ask that the district judge's summary judgment grant and final judgment be affirmed. Turning to the expert issue first that was just discussed, there's no showing that Judge Barker abused her discretion in excluding the Voss expert opinion. As Your Honor noted, the focus of, of the Voss opinion was on taking disparities from high or low and didn't offer any probative evidence of whether there's actually discriminatory or differential treatment negative to the out-of-state entities. In fact, when you look at the numbers of the 20... Yes, Your Honor. No, sorry. You look at the numbers of the 27 out-of-state entities in that pool of 47, when 12 were treated better than the guidelines, no other variables were considered, including, for instance, the record as to American Homeland is they say, well, we made, they call minor mistakes. There were hundreds and hundreds and hundreds of violations extracting more than $40,000 of improper charges to consumers. They say, well, we filed the Ohio Bar Guidelines rather than Indiana law. So the expert didn't take account of any other variables. The average rank when you look at in-state and out-of-state conducted by a standard statistical process shows them to be the same. There are 298 out-of-state licenses in Indiana in this title insurance business, 278 in-state not consistent with out-of-state discrimination. And of the revocations of licensure, all eight in-state licenses have been revoked in the relevant time period, only two out-of-state. And so Judge Barker did not abuse his discretion in excluding that opinion and, in fact, on multiple grounds methodology and would this actually aid the trier fact correctly determined that it would not. A couple other points that counsel made. In terms of the guidelines, an assertion that the guidelines were not followed here and they point to, for instance, that 8% interest was added to the payments. That's the Indiana statutory interest rate that is properly applied. Guidelines don't deal with that. Law deals with that. The statute deals with that. There's an assertion that, well, the guidelines don't speak to revocations. That's correct. They don't. The revocation was agreed to here, suggested by the plaintiffs, put in part of the agreed entry, that under oath they agreed to and said this was voluntary and fully entered into. With respect to the stray remark, the context of the examiner's discussion with counsel, these owner lawyers of the American Homeland Agency, was in the context of them saying, you've got to give us a break. We will go out of business. We won't pay any of these fines. We'll go bankrupt. And the examiner's actually sympathetic to their employees and ultimately said, made the comment that, well, the business is going to get written in Indiana if it doesn't get written here. That's a classic stray remark where Judge Parker did not abuse of discretion. So respectfully, Your Honors, the decision below was within the law, properly entered summary judgment, proper exclusion of the expert, and we'd ask for the judgment to be affirmed. Thank you, Your Honors. Thank you, counsel. Anything further, Mr. Engel? The court doesn't have any other questions. Thank you very much. The case is taken under advisement.